UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE JONES,<br><br>Plaintiff,<br><br>v.<br><br>PI KAPPA ALPHA INTERNATIONAL FRATERNITY, INC.; BRETT HELBERG; DAVID MALINOWSKI; PI KAPPA ALPHA FRATERNITY -- LOCAL CHAPTER MU ZETA at RAMAPO COLLEGE; SKENDER AGIC; JOHN HOGAN; JOSHUA WILLIAM NEWMAN; RAMAPO COLLEGE OF NEW JERSEY; RAMAPO COLLEGE BOARD OF TRUSTEES; VINCENT MARKOWSKI; PETER MERCER; CORY ROSENKRANZ; MELISSA VAN DER WALL; JORDYN MASSOOD; CHRISTOPHER RAINONE; JUSTIN SOMMERS; JOHN/JANE DOES 1-20; and XYZ CORPORATIONS 1-10,<br><br>Defendants. | Civ. No. 2:16-cv-7720-KM-MAH<br><br>OPINION |

## MCNULTY, U.S.D.J.:

Plaintiff Jane Jones[1] has asserted seventeen causes of action regarding alleged sexual assaults at Ramapo College on November 14, 2014. (Compl. ¶ 33 (ECF no. 1)).[2] The two persons who allegedly actually committed the sexual assaults, identified herein as "C.L." and "N.G.," are reportedly being prosecuted

---

[1] This fictional name is used to protect the plaintiff's privacy.

[2] Citations to certain record items will be abbreviated as follows:

Compl. = Complaint (ECF no. 1)

Def. Brf. = Defendants' Brief in Support of Motion to Dismiss (ECF no. 9)

Pl. Brf. = Plaintiff's Memorandum of Law in Opposition (ECF no. 33)

1

criminally, and are not defendants here. This action seeks to hold the College, its administrators and officials, and a number of individuals liable for their roles in allowing those assaults to occur.

Currently before the Court is the motion of one group of defendants (the "Ramapo Defendants") to dismiss the action for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(1), 12(b)(6). The Ramapo Defendants are Ramapo College of New Jersey, the Ramapo College Board of Trustees, Ramapo College Public Safety Director Vincent Markowski, Ramapo College President Peter Mercer, Ramapo College Coordinator of Substance Abuse and Prevention Cory Rosenkranz, and Ramapo College Acting Dean of Students and former Title IX Coordinator Melissa Van Der Wall.[3]

Counts 1–4 of the Complaint are not asserted against the Ramapo Defendants, and are not implicated in the current motion. Asserted against the Ramapo Defendants are Count 5 (state tort law); Count 6 (Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)); Count 7 (§ 1983, deliberate indifference); Count 8 (§ 1983, state-created danger); Count 9 (§ 1983, equal protection); Count 10 (New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2); and Count 11 (New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12).

For the reasons set forth below, the Ramapo Defendants' motion to dismiss is for the most part denied. It is granted only as to two claims as to which plaintiff did not contest the Ramapo Defendants' contentions on this motion: Count 6, a Title IX claim, insofar as it seeks injunctive relief, and

---

[3] Also named as defendants are Pi Kappa Alpha International Fraternity; various members and officers of the fraternity; former Ramapo College students; and several John Doe individuals and corporations. Three students, defendants Jordyn Massood, Christopher Rainone, and Justin Sommers, later filed a separate motion to dismiss (ECF no. 26), as did another student, defendant Skender Agic (ECF no. 31). Those two motions, based on failure to timely accomplish service as well as other grounds, will be decided separately.

2

Count 9, an equal protection claim. The remainder of the complaint will go forward as against the Ramapo Defendants.

## I. FACTUAL BACKGROUND

In considering a motion to dismiss, the Court is required to treat the facts alleged in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. I summarize those allegations as follows:

On or about Friday, November 14, 2014, Pi Kappa Alpha's Mu Zeta Chapter held a "Date Night" party on Ramapo College's Campus. (Compl. ¶¶ 33-35). The party was held at the on-campus apartment of defendant John Hogan, the fraternity chapter's sergeant-at-arms. (*Id.* ¶¶ 10, 12, 34-35). Plaintiff Jane Jones was a nineteen-year-old Ramapo student at the time. (*Id.* ¶ 36). She was not originally invited to the party, but attended after several fraternity members recruited "random students outside of the apartment building" to attend the party by "calling down" from Hogan's balcony. (*Id.* ¶ 39).

When Jones arrived at the party, a fraternity member named C.L. served her alcoholic drinks until she was "complete[ly] inebriated." (*Id.* ¶¶ 38, 40). C.L. then "lured" Jones into Hogan's bedroom. (*Id.* ¶ 40). C.L. and Joshua William Newman played "Rock, Paper, Scissors" outside Hogan's bedroom door "to determine who would get to sexually assault and rape" Jones. (*Id.* ¶ 41). C.L. then sexually assaulted her. (*Id.* ¶¶ 42-43).

Other fraternity members, including Hogan, became aware of the sexual assault. (*Id.* ¶ 43). Instead of intervening to protect Jones, the other fraternity members expelled C.L. and Jones from the party. Left behind at the party were Jones's shoes, underwear, jacket, and school identification. (*Id.* ¶¶ 43-47).

C.L. drove Jones across campus, passing through a number of campus security checkpoints, to Mackin Hall, the freshman dormitory. (*Id.* ¶ 50). C.L., who was not a freshman, did not have access to the dorm. (*Id.* ¶ 51). However, Christopher Rainone and Justin Sommers, who were then Ramapo College students, provided C.L. with one of their ID cards and allowed C.L. to use their

3

dorm room. (*Id.* ¶¶ 52-53). C.L. and another individual, N.G., took Jones to the dorm room, where they repeatedly sexually assaulted and raped her. (*Id.* ¶¶ 55-57). During much of this assault, the door was open; Jordyn Massood, Christopher Rainone, and Justin Sommers watched, "celebrated," and videotaped the assaults. (*Id.* ¶¶ 59-60).[4]

Jones suffered permanent and severe physical and psychological injuries and emotional and mental distress, as well as economic and other damages. (*Id.* ¶ 65). She was unable to continue at Ramapo College and this incident has had a negative effect on her educational career. (*Id.* ¶ 66).

Jones alleges that Ramapo College employees and representatives (John and Jane Does), including public safety and security employees on patrol and in security stations, were or should have been aware that these events were unfolding, but failed to intervene. (*Id.* ¶ 63). She also alleges that members of Ramapo College's administration, named as defendants in their official and individual capacities, violated state, federal, and constitutional laws in that they failed to implement and enact policies to prevent on-campus sexual assault. (*Id.* ¶¶ 95-123).

## II. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters*

---

[4] The complaint alleges that C.L. and N.G., not defendants here, have been criminally indicted in connection with the sexual assaults. (Compl. ¶¶ 44 n.2, 54 n.3).

4

*& the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. See 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under the "facial" 12(b)(1) standard, as under Rule 12(b)(6), the allegations of the complaint are assumed to be true. *Id.*

I construe the Ramapo Defendants' arguments for dismissal based on sovereign immunity and qualified immunity as a facial challenge to the complaint's jurisdictional basis. Accordingly, for these purposes the Court will

5

take the allegations of the complaint as true. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

### III. ANALYSIS

Section III.A briefly discusses claims as to which plaintiff does not oppose dismissal: Count 6, insofar as it seeks injunctive relief, and Count 9. Section B addresses defendants' sovereign immunity arguments regarding Counts 7 and 8. Section C discusses Counts 7 and 8 for failure to state a claim and qualified immunity. Section D covers defendants' motion to dismiss the remainder of Count 6 (*i.e.*, the claim for damages). Section E addresses defendants' motion to dismiss the state-law claims in Counts 5, 10, and 11.

#### A. Uncontested Dismissals

Plaintiff's brief states that she "does not oppose" the motion to dismiss the equal protection claim (Count 9) and the portion of her Title IX claim (Count 6) that seeks injunctive relief. (Def. Brf. at 25-27, 34-36; Pl. Brf. at 31, 43). Plaintiffs are "the masters of their complaints." *Erie Ins. Exchange v. Erie Indem. Co.*, 722 F.3d 154 (3d Cir. 2013). Jones, absent prejudice to the opposing party, may choose which claims to pursue. Count 9 and the portion of Count 6 that seeks injunctive relief are therefore dismissed.

#### B. Sovereign Immunity

The Ramapo Defendants argue that they enjoy Eleventh Amendment sovereign immunity with respect to the § 1983 claims brought against the college itself as a State entity, and against college officials in their capacities as State officials. (Def. Brf. at 6). The underlying question is whether Ramapo College is a State entity, *i.e.*, an "arm of the state" that is entitled to invoke the Eleventh Amendment.

"'[E]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances'— including the specific statutes at play and the practical reality of the institution's autonomy." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 85 (3d

6

Cir. 2016) (quoting *Kovats v. Rutgers*, 822 F.2d 1303, 1312 (3d Cir. 1987)). Some institutions in the state system have been definitively held to be arms of the State. *See, e.g., Maliandi, supra* (resolving a split among district courts and holding that Montclair State University is an "arm of the State" for Eleventh Amendment purposes); *Nannay v. Rowan College*, 101 F. Supp. 2d 272 (D.N.J. 2000) (finding on summary judgment that Eleventh Amendment immunity applied to Rowan College). Some, however, have not. *See Kovats*, 822 F.2d at 1312 (Rutgers not an arm of the state for Eleventh Amendment purposes); *Bostanci v. N.J. City Univ.*, No. 08-4339, 2010 WL 4961621, at *1-3 (D.N.J. Dec. 1, 2010) (New Jersey City University not an arm of the state for Eleventh Amendment purposes).

Ramapo College's status has not been settled by case law. As to Ramapo, then, the issue requires a "fact-intensive review that calls for [an] individualized determination[]." *Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007). The party asserting sovereign immunity bears the burden of proving entitlement to it. *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). Moreover, state-law sovereign immunity "is an affirmative defense ...." *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 548 (D.N.J. 2002) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (citing *Christy*, 54 F.3d at 1144)). I do not say it is impossible to decide the issue at the motion to dismiss stage, *see infra*, but these considerations tend to weigh against it.

Under the Third Circuit's three-part *Fitchik* test, a court must examine the following three elements: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007) (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). None of the three *Fitchik* factors is itself dispositive. The factors are co-equals, *Benn v. First Judicial Dist. Of Pa.*, 426

F.3d 233, 239-40 (3d Cir. 2005), "with the funding factor breaking the tie in a close case," *Maliandi*, 845 F.3d at 84.

I explicated the first factor in a recent case involving William Paterson University:

> The first "question at issue is 'whether a money judgment against a state instrumentality or official would be enforceable against the State.'" *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430, 117 S. Ct. 900, 137 L.Ed.2d 55 (1997). The appropriate underlying inquiry "is whether the State is obligated to pay or reimburse the University for its debts." *Bowers*, 475 F.3d at 547. In *Bostanci*, for example, this Court found that New Jersey City University "failed to show that the State of New Jersey bears an obligation to pay a judgment against it[,]" noting that, under state statutes pertaining to state universities generally, a university's board of trustees may borrow money from the state, but such borrowing would not constitute a debt of the State. *See Bostanci* at *2, 2010 U.S. Dist. LEXIS 126693 at *5 (citing N.J.S.A. § 18A:64–6(t)).

*Brennan v. William Paterson College*, 34 F. Supp. 3d. 416, 431 (D.N.J. 2014). That first factor, probably because it is so fact-intensive, appears to have been conceded *arguendo* by the Ramapo here. (Def. Brf. at 7-8) ("[E]ven assuming that the first factor ... does not weigh in favor of immunity, ... Ramapo should be considered an arm of the state...."). I am reluctant, however, to make a far-reaching holding without necessary facts, based on a strategic concession at the motion-to-dismiss stage.

"The second question asks 'whether the State itself considers the entity an arm of the state. Under the second factor, we look to how state law treats the entity generally; whether the entity can sue or be sued in its own right, whether the entity is separately incorporated, and whether the entity is immune from state taxation.'" *Brennan*, 34 F. Supp. 3d at 431 (citing *Bowers*, 475 F.3d at 548).

Here, defendants point out that Ramapo College "is not statutorily authorized to sue and be sued"; it is immune from all state taxation; has the power of eminent domain; and is considered to be a "state agency" for purposes

8

of adjudicating contested cases under the Administrative Procedure Act. (Def. Brf. at 11-12) (citing the relevant New Jersey statutes). Furthermore, Ramapo is required to abide by and enforce state policy prohibiting discrimination by State employers; the Governor represents Ramapo in its negotiations with the employees' collective bargaining units; and Ramapo employees participate in the State's health benefit and pension programs. (*Id.* at 12).

The third factor concerns the extent of the institution's autonomy. Defendants state that Ramapo's board is appointed by the Governor with advice and consent of the Senate; the Governor is statutorily designated as the public "employer" of all college employees and he has the sole power to collectively bargain on their behalf; and the timing and content of Board meetings is dictated by statute. (*Id.* at 8-9) (citing the relevant New Jersey statutes). The college is subject to financial, programmatic, and review oversight by the state Secretary of Higher Education. (*Id.* at 9). Moreover, Ramapo must comply with operational constraints and state regulations applicable to other state entities. (*Id.* at 10-11).

Defendants analogize to the Third Circuit's recent decision in *Maliandi v. Montclair State University*, which found that Montclair State University was entitled to sovereign immunity. (*Id.* at 8-13). As to Montclair State, the issue is settled and may easily be disposed of in any future motion to dismiss. However, the *Maliandi* case had a much more thorough set of factors to work with, and it discussed elements that are not addressed in the Ramapo Defendants' motion here. *See Maliandi*, 845 F.3d at 91-96. *Maliandi* also had the benefit of decisions of district courts in the Circuit which had split as to whether Montclair State University was an "arm of the state," entitled to sovereign immunity. *Id.* at 81.[5]

---

[5] The district court decision reversed by *Maliandi*, for example, rested on a prior decision by the same judge, entered on summary judgment. *Compare Maliandi v. Montclair State Univ.*, No. CIV.A. 14-01398 SRC, 2014 WL 3778259, at *1 (D.N.J. July 31, 2014) (citing *Ventura v. Montclair State Univ.*, No. 08–cv–5792 (SRC), 2011 WL 550720 (D.N.J. Feb. 9, 2011)) (MSU not an arm of the state), *with Sarmiento v.*

9

The Ramapo Defendants have made a suggestive showing; they may even turn out to be correct. Nevertheless, this factually intensive issue must await the summary judgment stage. I cannot make the necessary findings without a factual record, and the issue is not clear enough as a matter of precedent to justify dismissal on a Rule 12(b)(6) basis.

Accordingly, defendants' motion to dismiss the § 1983 Counts against Ramapo College and the Ramapo Defendants in their official capacities on the basis of their Eleventh Amendment sovereign immunity is denied. That denial is without prejudice to renewal of these contentions on summary judgment.

### C. § 1983 Claims: Sufficiency and Qualified Immunity

The Ramapo Defendants contend that Counts 7 and 8, both § 1983 claims, fail to state a claim against them. In their individual capacities, they also assert qualified immunity. (Def. Brf. at 14-27). The two § 1983 causes of action at issue are a state-created danger claim (Count 8) and a deliberate indifference claim (Count 7).

### 1. State-Created Danger (Count 8)

In the Third Circuit, a § 1983 state-created danger claim has four essential elements:

(1) [T]he harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

---

*Montclair State Univ.*, C.A. No. 04–cv–4176, letter op. (D.N.J. Mar. 31, 2005) (concluding that MSU is an arm of the State).

10

> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (line breaks added) (citing *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

The defendants argue that the fourth element is lacking because they are not alleged to have "affirmatively" used their authority. (Def. Brf. at 20-21). The Third Circuit analyzes this element by first "evaluat[ing] the setting or the 'status quo' of the environment before the alleged act or omission occurred," and then asking "whether the state actor's exercise of authority resulted in a departure from that status quo." *L.R.*, 836 F.3d at 243.

Jones's complaint alleges that the defendants had actual or constructive knowledge of a "hostile educational environment," in which fraternity members were "targeting young female students for involuntary sexual activity, hinged on intoxication." (Compl. ¶ 218). Despite this knowledge, the Ramapo Defendants allegedly failed to "supervise, control, and monitor" Pi Kappa Alpha fraternity activities, and other campus activities involving underage drinking; failed to prevent and eradicate the "hostile educational environment for female students"; failed to maintain effective policies and procedures for "reporting and recognizing nonconsensual sexual activities"; failed to properly protect female students; failed to provide proper security; and failed to exercise due care under the circumstances. (Compl. ¶ 219).

Jones contends that her argument extends beyond allegations of passive "failure to intervene." (Pl. Brf. at 22). She argues in her papers that "Ramapo Security officials and Residence Assistants working as agents and representatives of the Ramapo Defendants, had authority and utilized their authority to permit the rapist and Plaintiff to enter secure and prohibited areas of Ramapo College" to which C.L. and Jones, as non-freshmen, did not have rightful access. (Pl. Brf. at 22).

Thus her complaint seeks to hold the Ramapo Defendants individually liable for the actions of unnamed defendants John/Jane Does #1-10 "by virtue of the doctrines of vicarious liability and *Respondeat Superior*." (Compl. ¶ 189). But because *respondeat superior* is not available in a § 1983 action, the state-created danger claim must be considered in the context of municipal or supervisory liability; that is the only basis on which liability-creating acts of the college's security personnel would flow upward to supervisors or the college itself.

A governmental entity (assuming that the College is such an entity) is not liable under § 1983 via *respondeat superior*. *See Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). The institution must have personal involvement—for example, in the form of (1) a policy or custom, or (2) knowledge of and acquiescence in the unconstitutional conduct. *See also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This is sometimes referred to as "*Monell*" liability, or—misleadingly in this case—as "municipal" liability.

The same goes for the liability of supervisory and administrative personnel. Jones does not assert, for example, that defendants Vincent Markowski, Peter Mercer, Cory Rosenkranz, and Melissa Van Der Wall were personally present on the night of the assault or that they personally "utilized their authority to permit the rapist and Plaintiff to enter secure and prohibited areas of Ramapo College." (Pl. Brf. at 22). Rather, Jones argues that these defendants are liable as supervisors for any state-created danger caused by their subordinates.

Officials, like municipalities, "are liable only for their own unconstitutional conduct, and cannot 'be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" *Jankowski v. Lellock*, 649 F. App'x 184, 186 (3d Cir. 2016) (citing *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

12

676 (2009)))). Under certain conditions, however, supervisory liability *may* attach. A prerequisite—not sufficient, but necessary—is that there be a supervisor-subordinate relationship or a state law duty to control the actions of the primary actor. *Jankowski*, 649 F. App'x at 187 (citing *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000)). Where there is such a supervisory relationship, as in the case of municipal liability, there are two routes to supervisory liability for the unconstitutional actions of a subordinate:

(1) "First, liability may attach if the supervisor, 'with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused the constitutional harm.'" *Jankowski*, 649 F. App'x at 187 (citing *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). This theory is perhaps most pertinent to Jones's deliberate indifference claim, discussed in the next section.

(2) "Second, at least prior to *Iqbal*, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Jankowski*, 649 F. App'x at 187 (citing *A.M. ex rel. J.M.K.*, 372 F.3d at 586). This requires both (a) "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," and (b) "circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Id.* (citing *Oliva*, 226 F.3d at 202).

Jones has alleged that there were known sexual assaults prior to this incident, and that the supervisors were deliberately indifferent to the purported "hostile sexual environment" at Ramapo. (Compl. ¶¶ 26, 202). These contentions, while not terribly specific, plausibly suggest a claim. Any vagueness does not concern the actual wrongs done to the plaintiff, which are described very specifically; facts concerning policy-and-custom or defendants'

knowledge, as is usual, are mostly in the exclusive control of the defendants. I cannot justify dismissal as a matter of law on a Rule 12(b)(6) basis.

Defendants also argue for dismissal of the state-created danger claim based on a qualified immunity defense. To overcome qualified immunity, a plaintiff must plead facts "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As for the first prong, I have already denied the Rule 12(b)(6) motion to dismiss, finding that the plaintiff has sufficiently alleged a constitutional claim.

Even if I had not, however, I would deny qualified immunity based on the second, "clearly established" prong. It is true that, in general, "[t]he state-created danger theory is now widely accepted." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006). It is impossible to say at this early stage, however, that a reasonable official could have "evaluated the setting or the 'status quo' of the environment," and then concluded with any certainty that his or her "exercise of authority resulted in a departure from that status quo" in a way that created an unacceptable risk that third parties would permit sexual assault to occur. *L.R.*, 836 F.3d at 243. Such policy matters do not easily lend themselves to the kind of analysis under which we would assess, *e.g.*, a police officer's on-the-spot determination that there was probable cause to arrest.

In addition, the Third Circuit has explicitly declined to rule as to whether *Iqbal, supra,* has eliminated or narrowed the scope of supervisory liability. *Jankowski*, 649 F. App'x at 187 (citing *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011)). That area of the law, too, has an unsettled component.

Whether the issue is viewed directly or through the lens of qualified immunity, dismissal is inappropriate at this early stage. The merits of the state-created danger claim must await summary judgment or trial.

### 2. Deliberate Indifference Claim

The Ramapo Defendants similarly argue for the dismissal of Count 7, plaintiff's § 1983 deliberate indifference claim. (Def. Brf. at 15). This component of their motion to dismiss will be denied for many of the same reasons discussed as to Count 8 in the preceding section. Regarding plaintiff's deliberate indifference claim, the Ramapo Defendants argue that plaintiff does not explain how they were personally involved in, or otherwise responsible for, the alleged constitutional violation. (Def. Brf. at 15).

Plaintiff has alleged that these defendants were deliberately indifferent to complaints of sexual harassment and sexual misconduct against female students and visitors; alcohol use, abuse, and consumption on campus, particularly involving fraternities; and public safety problems on campus. (Compl. ¶ 210). Factual allegations include failure to take appropriate measures in response to allegations of sexual or physical abuse of students; failure to promulgate a comprehensive and clear sexual misconduct policy; and failure to properly train the College's public safety staff as to sexual misconduct investigations. (Compl. ¶ 211).

Again, these contentions will be developed, or refuted, in discovery. At this stage, however, the plaintiff has made sufficient allegations regarding the Ramapo Defendants to maintain a plausible claim. As for qualified immunity, I incorporate the analysis under Count 8, *supra*. The Ramapo Defendants' motion to dismiss the Complaint is denied as to Count 7.

### D. Title IX Damages Claim

In Count 6, the plaintiff alleges that she was subject to gender-based discrimination in violation of Title IX of the Education Amendments of 1972. Title IX provides in relevant part, "No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).

15

Plaintiff alleges that the Ramapo Defendants were "deliberately indifferent" to "a hostile sexual environment" on campus and "known acts of harassment and assaults." (Compl. ¶¶ 199-201). Defendants contend that plaintiff has failed to allege actual knowledge of prior similar incidents of sexual assault. (Def. Brf. at 28).

The Supreme Court has held that, unless there is an official policy of the recipient entity, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Furthermore, recipients are liable in damages for student-on-student harassment "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Plaintiff's allegations, it is true, are to some degree conclusory. But here again, as to her own injuries she is quite specific, and she cannot be expected to possess essential facts about the institution's knowledge. The Complaint does allege that the defendants were aware of "prior reports of sexual assaults, sexually hostile behavior and physical assaults of female students and visitors" (Compl. ¶ 179) and demonstrated a "systemic failure to discipline" (Compl. ¶ 202). The plaintiff also alleges that there were prior acts of sexual misconduct involving Pi Kappa Alpha's campus chapter. (Compl. ¶¶ 156, 192). Perhaps true, perhaps not; but if the Ramapo Defendants were aware of these incidents and did nothing, they may be exposed to Title IX liability.

At the pleading stage, an allegation that the Ramapo Defendants were deliberately indifferent to prior incidents of sexual assault involving the same

group of individuals states a plausible claim under Title IX. Accordingly, the motion to dismiss Count 6's claim for damages is denied.

### E. State Law Claims

#### 1. New Jersey Constitution and Civil Rights Act

Plaintiff alleges violations of the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann § 10:6-2. Defendants counter that sovereign immunity bars these claims against the Ramapo Defendants. (Def. Brf. at 13-14). In prior cases, I have cited ample authority that "the NJCRA is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs.*, 493 F. App'x 238, 241 (3d Cir. 2012); *see also Rezem Family Assocs. v. Borough of Millstone*, 30 A.3d 1061, 1067-68 (N.J. Super. Ct. App. Div. 2011). In particular, the same Eleventh Amendment sovereign immunity analysis that applies to § 1983 claims also applies by analogy to NJCRA claims. *Endl v. New Jersey*, 5 F. Supp. 3d 689 (D.N.J. 2014). For the reasons expressed in Section III.B, *supra*, Defendants' motion to dismiss Count 10 is denied.

#### 2. New Jersey Law Against Discrimination

Plaintiff also alleges violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1–49. NJLAD, a broadly remedial statute, "permits a cause of action against a school district for student-on-student harassment" based on sex "if the school district's failure to reasonably address that harassment has the effect of denying to that student any of a school's 'accommodations, advantages, facilities or privileges.'" *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 189 N.J. 381, 402 (2007). A school will be held liable for such harassment when the school "knew or should have known of the harassment but failed to take actions reasonably calculated to end the mistreatment and offensive conduct." *Id.* at 390.

The Ramapo Defendants contend that the Complaint does not plausibly allege that they "knew or should have known" about the harassment. (Def. Brf. at 36-37). Here, as in the prior counts, I note the allegations that the Ramapo Defendants had actual notice of sexual assaults, harassment, and

17

inappropriate conduct, some of it "committed by PIKE fraternity members, including 'C.L.'" (Compl. ¶ 240; *see also id.* ¶¶ 26, 179.)

The Complaint sufficiently alleges that Ramapo Defendants knew or should have known about acts of harassment by Pi Kappa Alpha fraternity members and C.L. I therefore deny defendants' motion to dismiss Count 11.

### 3. State-Law Negligence Claims

Count 5 alleges a state-law negligence claim against the Ramapo Defendants. Defendant argues that (1) Ramapo College is immunized from negligence liability under the New Jersey Charitable Immunity Act ("NJCIA"), N.J. Stat. Ann. § 2A:53A-7(a); (2) the college is immunized for failure to provide protection because of N.J. Stat. Ann. § 59:5-4; and (3) as a matter of law, a negligence *per se* theory cannot be based on alleged Title IX violations. (Def. Brf. at 37-39).

(1) Charitable immunity does not eliminate any and all negligence claims. While charitable immunity is "liberally construed" under N.J. Stat. Ann. § 2A:53A-10, charities are not immune from "a willful, wanton or grossly negligent act of commission or omission." N.J. Stat. Ann. § 2A:53A-7; *see also Orzech v. Fairleigh Dickinson Univ.*, 985 A.2d 189, 196 (N.J. Super. Ct. App. Div. 2009). The Complaint pleads that these defendants acted with "gross negligence." (Compl. ¶¶ 191, 208).

The parties also disagree on whether Jones was an intended "beneficiary" under the NJCIA in connection with the events of November 14, 2014. (Def. Brf. at 38); (Pl. Brf. at 46-50). Defendants argue that Jones, as a Ramapo student, was a *per se* beneficiary. (Def. Brf. at 38). Plaintiff counters that she was not a beneficiary, because the events on the relevant evening had no connection to the university's charitable mission. (Pl. Brf. at 47). As to a university, "beneficiary status turns on whether the charitable organization was performing its charitable works at the time of the accident, and the relationship at the time of the organization and the claimant." *Orzech v. Farleigh Dickinson Univ.*, 985 A.2d 189, 195 (N.J. Super. Ct. App. Div. 2009).

18

The court concluded that "while living in a dormitory a student is a beneficiary, to some degree, of the university." *Id.* at 209. Jones was a commuter student, not a dormitory resident; nevertheless, many of the critical events took place in a Ramapo dorm. The relation between the events and the university's charitable mission presents a question of fact, requiring the balancing of factors with the benefit of an evidentiary record.

"Charitable immunity is an affirmative defense, as to which, like all affirmative defenses, defendants bear the burden of persuasion." *Abdallah v. Occupational Ctr. of Hudson Cty., Inc.*, 798 A.2d 131, 136 (N.J. Super Ct. App. Div. 2002). Consequently, I cannot dismiss a complaint on a motion to dismiss unless it is clear from the face of the complaint that the immunity applies. The applicability of charitable immunity here is not so clear.

(2) Jones's state law negligence claims are not wholly barred by the police-protection immunity, because they extend beyond claims of insufficient police protection. A New Jersey statute provides that "Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." N.J. Stat. Ann. § 59:5-4. (Def. Brf. at 38-39). This immunity does not extend to all of plaintiff's negligence claims or require dismissal of Count 5. Jones's negligence claims include, for example, "failure to properly train its Public Safety staff as to sexual misconduct investigations." (Compl. ¶ 169). Such a claim does not directly relate to police protection, but rather focuses on the purported negligence of Ramapo College in investigating and pursuing sexual assault allegations.

(3) I agree that a plaintiff cannot state a claim for negligence *per se* that relies on alleged Title IX violations. (Def. Brf. at 39); (Compl. ¶ 183-184). The Supreme Court has clarified that, except for a case involving the official policy of the recipient entity, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual

knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). A claim that violation of Title IX, or regulations thereunder, constitutes negligence *per se* would vitiate Title IX's knowledge requirement.

Negligence *per se* is the doctrine that violation of a statute in itself establishes negligence. *See Martin v. Herzog*, 228 N.Y. 164, 167-68 (1920) (Cardozo, J.). *Gebser* explains, however, that a violation of Title IX does not give rise to a claim unless there is an official policy or actual knowledge. To allow a violation of Title IX to establish negligence *per se* would effectively undermine the *Gebser* rule and excuse the policy/knowledge requirement. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 196-97 (D.R.I. 2016); *Doe v. Univ. of the South*, No. 4:09-62, 2011 WL 1258104, at *14 (E.D. Tenn. Mar. 31, 2011). Negligence *per se* would be an end-run around the requirements of Title IX. I agree, therefore, that a claim of negligence *per se* cannot be founded on a violation of Title IX.

To be sure, then, not every possible negligence theory is viable, and I have briefly discussed some of those vulnerabilities for the guidance of the parties. Nevertheless, Count 5 does assert negligence claims that survive a Rule 12(b)(6) analysis. The motion to dismiss Count 5 is therefore denied.

### IV. CONCLUSION

For the foregoing reasons, the Ramapo Defendants' motion to dismiss the Complaint is **GRANTED** as to Count 6 insofar as it seeks injunctive relief, as well as Count 9 in its entirety. The motion to dismiss is **DENIED** as to all other Counts and claims. An appropriate Order follows.

Dated: September 13, 2017

**HON. KEVIN MCNULTY, U.S.D.J.**