UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JANE JONES, | : | |
|  | : | Civil Action No. 16-7720 (KM) |
| Plaintiff, | : | |
|  | : | |
| v. | : | |
|  | : | OPINION |
| PI KAPPA ALPHA INTERNATIONAL FRATERNITY, INC., et. al., | : | |
|  | : | |
| Defendants. | : | |

I.     INTRODUCTION

This matter comes before the Court by way of Plaintiff Jane Jones's[1] ("Plaintiff") motions for extensions of time to effect service on five Defendants: Christopher Rainone ("Rainone"), Justin Sommers ("Sommers"), Jordyn Massood ("Massood"), Skender Agic ("Agic"), and Pi Kappa Alpha Local Chapter Mu Zeta ("PIKE Local"). Pl.'s Mots. for Extensions of Time to Serve, D.E. 41, 46, 50. Plaintiff also seeks leave to serve Defendants Rainone and PIKE Local by alternative means pursuant to Federal Rule of Civil Procedure 4(e). Pl.'s Mots. for Substitute Service, D.E. 41, 46. Specifically, Plaintiff requests leave to effect service on Rainone through his attorney and by way of regular and certified mail, and requests leave to serve PIKE Local through its insurance carrier, Certain Underwriters at Lloyd's of London ("Lloyd's of London"). Pl.'s Ltr. in Supp. of Mot. for Sub. Service at 2, D.E. 41-1; Pl.'s Br. in Supp. of Mot. for Sub. Service at 14, D.E. 46-1. Defendants Rainone, Sommers, Massood, and Agic oppose the Plaintiff's

---

[1] This is a fictitious name. See Compl. n. 1, D.E. 1.

1

application. Defs. Opp'n Briefs, D.E. 47, 53. Defendant PIKE Local has not opposed the motion. However, Lloyd's of London, as PIKE Local's insurance carrier, filed an application to intervene and opposition to Plaintiff's request for substitute service. D.E. 51, 52.

Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided these motions without oral argument. For the reasons set forth below, Plaintiff's motions are granted in part and denied in part.

## II. BACKGROUND

Plaintiff filed this action on October 21, 2016, alleging that she was the victim of multiple sexual assaults on or about November 14, 2014 while she was a student at Ramapo College of New Jersey. See generally Compl., D.E. 1. The Complaint alleges that the sexual assault began at a PIKE Fraternity party, where alcohol was being served to minors, and extended to a dorm room on the Ramapo College campus. Id. Plaintiff brings claims against Defendants Sommers, Massood, and Rainone [2] alleging negligence, failure to render assistance to victim, intentional infliction of emotional distress, aiding commission of a tort, and the unlawful recording of sexual images. Id. ¶¶ 243-270. As against Defendant PIKE Local and Defendant Agic, individually and as President of PIKE Local at Ramapo during the time of Plaintiff's sexual assault, Plaintiff alleges claims of negligence, social host liability, social host agency, and negligent supervision. Id. ¶¶ 124-167.

The Complaint in this case was filed on October, 21, 2016, and therefore the ninety–day deadline to serve Defendants with the Summons and Complaint was January 19, 2017. See Fed.

---

[2] Defendants Sommers, Massood, and Rainone were students at Ramapo at the time of the sexual assault, but were not members of the PIKE Fraternity.

R. Civ. Pro. 4(m). Plaintiff alleges that after the Complaint was filed she "was diligent and has attempted multiple legitimate avenues to serve Defendants with the Summons and Complaint" within the ninety-day time period. See Pl.'s Br. in Opp'n of Mot. to Dismiss at 5, D.E. 40; see also Pl.'s Br. in Supp. of Mot. for Extension at 11, D.E. 46-1. However, Plaintiff failed to serve any of the five Defendants at issue in these motions with the Summons and Complaint by January 19, 2017. Defendant Agic was personally served on March 2, 2017, Defendant Sommers was personally served on March 22, 2017, and Defendant Massood was personally served on April 6, 2017. See Affidavits of Service, D.E. 21, 29, 38. To date, Defendants Rainone and PIKE Local have not been served.

On March 24, 2017, Defendants Massood, Sommers, and Rainone moved to dismiss the Complaint against them based on Fed. R. Civ. P. 12(b)(5) for Plaintiff's failure to serve them within ninety days of filing the Complaint. See Mot. to Dismiss, D.E. 26. Plaintiff opposed this motion and simultaneously filed the present motion to extend time to serve as to Defendants Massood, Sommers, and Rainone, and requested leave to serve Defendant Rainone through his attorney. See Pl.'s Opp'n to Mot. to Dismiss, D.E. 40; see also Pl.'s Ltr. in Supp. of Mot. for Extension and Sub. Service, D.E. 41-1. On April 17, 2017, Defendant Agic also moved to dismiss the Complaint for failure to effect timely service pursuant to Fed. R. Civ. P. 12(b)(5). See Mot. to Dismiss, D.E. 31. Plaintiff opposed Agic's motion and simultaneously filed the present motion for an extension of time to serve. See Pl.'s Opp'n to Mot. to Dismiss, D.E. 49; see also Pl.'s Ltr. in Supp. of Mot. for Extension, D.E. 50. On May 9, 2017, Plaintiff filed a motion for extension of time to serve Defendant PIKE Local, and also requested leave to serve PIKE Local through its insurance carrier, Lloyd's of London. See Mot. for Extension and Sub. Service, D.E. 46.

3

### III.     DISCUSSION

#### a. <u>**Applicable Legal Standards**</u>

Federal Rule of Civil Procedure 4(m) governs extensions of time to effect service. Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If a plaintiff fails to effect proper service within the ninety-day period but "shows good cause for the failure, the court must extend the time for service for an appropriate period." <u>Id.</u> Thus, pursuant to Rule 4(m), a district court must first assess whether good cause exists for an extension of time. <u>See</u> <u>Petrucelli v. Bohringer & Ratzinger</u>, 46 F.3d 1298, 1305 (3d Cir. 1995). "If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." <u>Id.</u>

In assessing whether a plaintiff has demonstrated good cause warranting a mandatory extension of time to serve, the United States Court of Appeals for the Third Circuit has advised that a Court should consider the "(1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve." <u>MCI Telecomms. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1097 (3d Cir. 1995) (citing <u>United States v. Nuttall</u>, 122 F.R.D. 163, 166-67 (D. Del. 1988)). The Court's analysis should mainly focus on whether a plaintiff has demonstrated "good faith" in requesting the extension and whether there is "some reasonable basis for noncompliance within the time specified in the rule." <u>Id.</u> (citing <u>Petrucelli</u>, 46 F.3d at 1312). The Third Circuit has also instructed that while prejudice

4

to defendant "may tip the 'good cause' scale, the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." Id.

Federal Rule of Civil Procedure 4(e) governs substitute service. Rule 4(e) provides that service can be effectuated "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Pursuant to New Jersey law, personal service is the primary and preferred method to serve an individual defendant located within the state. N.J. Ct. R. 4:4-4(a). However, when personal service cannot be effectuated in accordance with N.J. Ct. R. 4:4-4(a), New Jersey law allows for substitute modes of service so long as the proposed form of service is "provided by court order, consistent with due process of law." See N.J. Ct. R. 4:4-4(b)(3).

Whether Plaintiff is entitled to the extensions of time to effect service for each of the five Defendants at issue shall be addressed in turn below. Additionally, Plaintiff's requests for leave to serve Defendants Rainone and PIKE Local by alternative means shall also be discussed below.

    b. **Analysis**

        i. **Defendant Rainone**

On November 16, 2016, approximately three weeks after the Complaint was filed, Plaintiff's counsel, Patrick J. Whalen ("Whalen"), sent a waiver of service of the Summons and Complaint to Rainone's criminal defense attorney, Shelley Albert. See Certification of Patrick J. Whalen ¶ 3. ("Whalen Cert."), D.E. 40-1.[3] Whalen believed that Ms. Albert had represented Rainone in the Ramapo College disciplinary proceedings related to the same sexual assault at issue

---

[3] On November 24, 2014, the Bergen County Prosecutor brought charges against Rainone, Massood, and Sommers related to the alleged sexual assault at Ramapo College. See Whalen Cert., D.E. 40-4, Ex. L. According to Plaintiff, Rainone, Massood, and Sommers were all ultimately allowed into the state court's Pretrial Intervention Program. See Pl.'s Br. in Opp'n to Mot. to Dismiss at 10 n. 4, D.E. 40.

in this civil case. See Pl.'s Br. in Opp'n to Mot. at 7, D.E. 40; see also Whalen Cert. ¶ 24, D.E. 40-1.[4] Whalen was under the mistaken belief that Ms. Albert was also representing Rainone in this civil action. Ms. Albert's office signed for the certified mailing of the waiver form on November 23, 2016. See Return Receipt, November 23, 2016, Exh. A to Whalen Cert., D.E. 40-2.

According to Whalen, on November 15, 2016, he was contacted by a representative from Rainone's mother's homeowner's insurance company, CastlePoint, inquiring as to whether Whalen was "the Patrick J. Whalen who filed the attached lawsuit for Ms. Jones?" See Email Correspondence, November 15, 2016, Exh. B to Whalen Cert., D.E. 40-2. Whalen inferred from this communication that Rainone had received the Complaint and that he or his mother had provided a copy of the complaint to the homeowner's insurance company. According to Plaintiff, a declaratory judgment action was filed against Rainone on April 20, 2017 in the New York Supreme Court, and that the complaint in that case stated that "Defendant Rainone has tendered the personal injury complaint of 'Jane Jones' to CastlePoint for defense and indemnification." See Exh. C to Whalen Cert., D.E. 40-2.

At some point in late February 2017, Whalen learned that no one had executed the waiver of service form on behalf of Rainone. Br. in Opp'n to Mot. at 9, D.E. 40. Whalen, who represents that he is a solo practitioner, claims that for much of December 2016 through February 2017, he was involved in "an extraordinarily complex and contentious Consumer Fraud Act case" in

---

[4] In opposition to Plaintiff's motion for an extension of time to serve, Rainone stated that Ms. Albert in fact did not represent him in the Ramapo College disciplinary proceedings. See Affidavit of Victoria Wickman ¶ 4, D.E. 47. Defendants Sommers and Massood also contend that their defense attorneys in the criminal action did not represent them in the college disciplinary proceedings. Id.

6

Middlesex County Superior Court involving "intensive dispositive motions and motions *in limine*" and a trial which lasted approximately four weeks. Whalen Cert. ¶¶ 19-21, D.E. 40-1.

Whalen alleges that after he realized that the waiver of service form was not executed, he made several calls to Ms. Albert's office to inquire as to the status of the waiver and also asked whether Ms. Albert would be able to provide Rainone's contact information. Whalen Cert. ¶ 7, D.E. 40-1. Ms. Albert provided no information, and on March 23, 2017, Whalen ordered a skip trace from Spartan Detective Agency in order to determine Rainone's whereabouts. Id. ¶ 8. On March 24, 2016, Victoria Wickman, Esq., ("Wickman") entered an appearance on behalf of Rainone, Sommers, and Massood in this case. See Notice of Appearance, D.E. 25. Whalen contacted Wickman and asked her to provide a valid address for Rainone, but Wickman refused. See Email Correspondence, March 24, 2017 and April 26, 2017, Exh. F. to Whalen Cert., D.E. 40-3.

Plaintiff's counsel received the skip trace results for Rainone on April 3, 2017. The results revealed a current address in Staten Island, New York. See Exh. G to Whalen Cert., D.E. 40-3. Plaintiff then arranged for a process server, Guaranteed Subpoena Service, to effect service on Rainone on April 3, 2017 at the Staten Island address, but the process server informed Plaintiff's counsel that "nobody is ever home at that address." Whalen Cert. ¶¶ 10-11, D.E. 40-1; Exh. G to Whalen Cert., D.E. 40-3. Guaranteed Subpoena attempted to serve Rainone at the same address on April 19, 2017, but the process server was informed by a "Jane Doe" that "no one lives at the location by the name of Christopher Rainone." See Exh. G to Whalen Cert., D.E. 40-3. Based these failed attempts to effect personal service, Plaintiff submits that Rainone is attempting to evade service. Whalen Cert. ¶ 11, D.E. 40-1.

7

Based on the foregoing information, the Court is satisfied that Plaintiff has shown "good cause" warranting a mandatory extension of time to serve. See Petrucelli, 46 F.3d at 1305. First, Plaintiff has shown that the efforts to effect service on Rainone were "reasonable." See MCI Telecomms. Corp., 71 F.3d at 1097. Approximately three weeks after the Complaint was filed, Plaintiff sent the waiver of service form to Rainone's criminal defense attorney, Ms. Albert, whom Plaintiff believed also represented Rainone in the Ramapo College disciplinary proceedings. Based on Ms. Albert's history of representation of Rainone, Plaintiff inferred that she was representing Rainone in this civil action, and that Ms. Albert "had authority, either explicitly or implicitly, to waive and/or accept service on their behalf in this civil action." See Pl.'s Br. in Opp'n to Mot. to Dismiss at 12, D.E. 40. Someone at Ms. Albert's office executed the mailed waiver of service form. See Return Receipt, November 23, 2016, Exh. A to Whalen Cert., D.E. 40-2. Although Plaintiff's belief that Ms. Albert was representing Rainone in this civil matter ultimately proved to be mistaken, Plaintiff's attempt to effect service through the waiver form soon after the Complaint was filed, demonstrates that Plaintiff was acting with reasonable diligence in attempting to effect timely service. Furthermore, the correspondence from the representative of Rainone's mother's homeowner's insurance company indicated to Whalen that Rainone had indeed received the Complaint, and was planning to return the waiver form executed.

After it became apparent to Whalen that the waiver of service form was not returned executed, Whalen immediately took steps to locate Rainone's whereabouts in order to effect personal service. Whalen contacted both Rainone's civil and criminal defense attorneys for information, and when that failed, he proceeded to order a skip trace to locate Rainone. Whalen Cert. ¶¶ 7-10, D.E. 40-1. When Plaintiff received the results of the skip trace, Plaintiff hired a process server to attempt to serve Rainone on at least two different occasions. Id. ¶ 11. Plaintiff's

efforts to effect personal service on Rainone after Plaintiff realized that Rainone had not executed the waiver of service form, although certainly belated, demonstrate the Plaintiff has been acting in "good faith" in attempting to effect service. MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d at 1097.

The second factor in the Court's good cause analysis asks whether the Defendant will be prejudiced "by lack of timely service." See MCI Telecomms. Corp., 71 F.3d at 1097. The Court finds that this factor also weighs in favor of granting the requested extension. Rainone alleges that he will be prejudiced if the Court grants Plaintiff's request for the extension because if the Court were to instead deny the extension and dismiss the case without prejudice, Plaintiff would have to re-file her case beyond the applicable statute of limitations for her claims, and then Rainone would be forced to defend against time-barred claims. See Defs.' Opp'n Br. at 8, D.E. 47-1. The Third Circuit squarely rejected a similar argument in Boley v. Kaymark 123 F. 3d 756, 759 (3d Cir. 1997). There, the Third Circuit instructed that the trial court should treat the running of a statute of limitations only "as a factor favoring the plaintiff and not as a basis for potential prejudice to the defendant." Rainone has alleged no other prejudice resulting from Plaintiff's failure to effect timely service, and as such, this second factor weighs in favor of granting the requested extension.

The third factor--whether "plaintiff moved for an enlargement of time to serve"--weighs in favor of neither party. MCI Telecomms. Corp., 71 F.3d at 1097. Until Plaintiff filed the present motion for an extension of time to serve, Plaintiff had not asked the Court for any other enlargement of time beyond the ninety-day period. Courts in this Circuit have found that failure to request an enlargement of time "certainly is not by itself fatal to a plaintiff's efforts to establish good cause" and that this third factor can be viewed as a "subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts." United States v. Nuttal, 122 F.R.D. 163,

9

197 (D. Del. 1988) (citing Gordon v. Hunt, 116 F.R.D. 313, 321 (S.D.N.Y. 1987)). Therefore, given that Plaintiff made other diligent efforts to serve Rainone, this third factor does not weigh favorably or unfavorably to the application.

Balancing these factors, the Court finds that Plaintiff has established "good cause" for failing to effect timely service on Rainone, and the Court will grant Plaintiff's motion for an extension of time to serve for Rainone.

Turning next to Plaintiff's request to serve Rainone through his attorney of record, Victoria Wickman, and by way of regular and certified mail,[5] the Court considers whether Plaintiff has made a diligent inquiry "to ascertain the defendant's whereabouts," and whether the proposed means of substitute service would provide sufficient notice to apprise Rainone of this action and give him an opportunity to defend himself. See Modan v. Modan, 327 N.J. Super. 44, 47 (App. Div. 2000); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). As discussed above, Plaintiff's counsel contacted both Rainone's criminal defense attorney and his current civil attorney in this action to obtain Rainone's current address. Whalen Cert. ¶¶ 7, 9, D.E. 40-1. Both attorneys failed or refused to provide Plaintiff's counsel with that information. Plaintiff's counsel also ordered a skip search and hired a process server to attempt to personally serve Rainone on at least two separate occasions at the address provided by the skip search. Id. ¶¶ 10-11. These efforts show that Plaintiff demonstrated "a good faith, energetic effort to search and find a defendant whose address is unknown." See J.C. v. M.C., 438 N.J. Super. 325, 331 (Ch. Div. 2013).

---

[5] Plaintiff proposes mailing the Summons and Complaint to the address provided by the skip trace search conducted for Rainone. See Ltr. in Supp. of Mot. for Sub. Service, D.E. 41-1.

The Court is also satisfied that the proposed means of substitute service, serving Rainone's attorney of record in this action, and by way of certified and regular mail, would provide Rainone with notice of the case pending against him. Ms. Wickman entered an appearance on behalf of Rainone in this case on March 24, 2017, and on that same date, filed a motion to dismiss on behalf of Rainone. See Notice of Appearance, D.E. 25; Mot. to Dismiss, D.E. 26. As such, it is fair to presume that Rainone is already well aware of this action, and that even if he is not, serving the attorney of record in this case, who has been representing Rainone since March 2017, is "reasonably calculated" to apprise Rainone of this action. See Mullane, 339 U.S. at 314. Therefore, Plaintiff's request to serve the summons and complaint upon Ms. Wickman, and by way of certified and regular mail, is granted.

### ii. Defendant Justin Sommers

The history of attempted service on Defendant Sommers is similar to that for Defendant Rainone. Sommers was represented by an attorney, Vincent Verdiramo, in the criminal action. See Pl.'s Br. in Opp'n to Mot. to Dismiss at 12, D.E. 40. Plaintiff believed that Verdiramo also represented Sommers in the Ramapo College disciplinary proceedings, which resulted in Sommers's expulsion from the college. Id. As such, Plaintiff sent a waiver of service form via certified mail to Verdiramo's office on November 16, 2016. Id. Whalen alleges that he sent the waiver of service form directly to Verdiramo out of respect for the fact "that this Defendant already had legal representation for the directly related criminal and college disciplinary charges against him." Id. On November 21, 2016, Mr. Verdiramo's office signed for the certified mailing of the waiver of service form. See Return Receipt, November 23, 2016, Exh. H to Whalen Cert., D.E. 40-3.

11

In late February 2017, Plaintiff became aware that the waiver of service form was never executed for Sommers. Plaintiff immediately reached out to Mr. Verdiramo for Sommers's current address, but Mr. Verdiramo ignored the request. Whalen Cert. ¶ 13, D.E. 40-1. Plaintiff then conducted an internet search, which revealed an address for Sommers in Staten Island, New York. Pl.'s Br. in Opp'n to Mot. to Dismiss at 13, D.E. 40. Plaintiff arranged for a process server to effect service on Sommers, and Sommers was personally served with the Summons and Complaint on March 22, 2017. See Affidavit of Service, D.E. 38.

Based on the same reasoning discussed above for Defendant Rainone, the Court concludes that Plaintiff has demonstrated "good cause" warranting an extension of time to effect service beyond the ninety-day time period for Defendant Sommers. See MCI Telecomms. Corp., 71 F.3d at 1097. Therefore, the service of March 22, 2017 on Defendant Sommers will be deemed timely.

### iii. Defendant Massood

The history of attempted service on Defendant Massood is similar to that discussed above for Defendants Rainone and Sommers. Massood was represented by an attorney, Brian J. Neary, in the criminal action against her in Bergen County Superior Court. Pl.'s Br. in Opp'n to Mot. at 13, D.E. 40. Plaintiff also believed that Neary had represented Massood in the Ramapo College disciplinary proceedings. Whalen Cert. ¶ 24, D.E. 40-1. Thus, Plaintiff sent a waiver of service form via certified mail to Mr. Neary's office on November 16, 2016. Id. ¶ 15. On November 22, 2016, Mr. Neary's office signed for the certified mailing of the waiver of service form. See Return Receipt, November 22, 2016, Exh. J to Whalen Cert., D.E. 40-3.

In late February 2017, Plaintiff became aware that the waiver of service form was never executed for Massood. Plaintiff then reached out to Mr. Neary for Massood's current address, but Mr. Neary ignored the request. Whalen Cert. ¶ 16, D.E. 40-1. Plaintiff then ordered a skip search

for Massood on March 21, 2017, which revealed an address for Massood in Wayne, New Jersey. See Exh. K to Whalen Cert., D.E. 40-4. Plaintiff arranged for a process server to effect service on Massood, and Massood was personally served with the Summons and Complaint on April 11, 2017. See Affidavit of Service, D.E. 29.

Considering this history of service on Massood and based on the same reasoning discussed above for Defendants Rainone and Sommers, the Court concludes that Plaintiff has demonstrated "good cause" warranting an extension of time to effect service beyond the ninety-day time period for Defendant Massood. See MCI Telecomms. Corp., 71 F.3d at 1097. As such, the service of April 11, 2017 on Massood will be deemed timely.

### iv. Defendant Agic

Plaintiff claims that as early as February 5, 2015, the PIKE Defendants, including Defendant Agic, were placed on notice of Plaintiff's claims against them.[6] See Notice of Claims Letter, Exh. A to Whalen Cert., D.E. 49-2. In response to the notice of claims letter, Plaintiff received a letter from Richard Charlton, claiming to be the attorney representing the PIKE Defendants. See Letter, February 10, 2015, Exh. B. to Whalen Cert., D.E. 49-2. Mr. Charlton advised Plaintiff to "direct all future communications to The Pi Kappa Fraternity or the Mu Zeta Chapter to me for response" and added that Plaintiff should "please refrain from communicating with any of its members, except through me." Id.

On November 16, 2016, Plaintiff sent waiver of service forms to Mr. Charlton for the PIKE Defendants, including Defendant Agic. See Exh. C to Whalen Cert., D.E. 49-2. On November 23, 2016, Mr. Charlton sent back the waiver forms unexecuted and informed Plaintiff that he was

---

[6] Agic is named as a defendant in both his individual capacity and as an officer in his role as the president of PIKE Local during the time of Plaintiff's sexual assault. Compl. ¶ 11, D.E. 1.

13

no longer serving as counsel for the PIKE Defendants. See Pl.'s Br. in Opp'n to Mot. to Dismiss at 6, D.E. 49. Plaintiff then discovered that certain PIKE Defendants were involved in another lawsuit in Bergen County Superior Court and were being represented by Michael E. Gorelick, Esq.[7] Whalen Cert. ¶ 7, D.E. 49-1. As such, Plaintiff sent waivers of service for the PIKE Defendants, including Agic, to Mr. Gorelick on December 29, 2016. Id. ¶ 7. On January 12, Mr. Gorelick contacted Plaintiff and indicated that although he would be representing some of the PIKE Defendants in this matter, he would not be representing Agic, and would therefore not be signing the waiver of service form for Agic. Id. ¶ 11.

On January 24, 2016 Plaintiff sent the wavier of service form to Agic's place of employment, but the mail was returned to Plaintiff on February 22, 2016 as "unclaimed." See Pl.'s Br. in Opp'n to Mot. to Dismiss at 5, D.E. 49. On February 24, 2017, Plaintiff arranged for formal service to be effected on Agic, and on March 2, 2017, Agic was personally served. See Affidavit of Service, D.E. 21.

Based on the foregoing information, the Court concludes that Plaintiff has demonstrated good cause warranting an extension of time for service for Defendant Agic. See MCI Telecomms. Corp., 71 F.3d at 1097. Plaintiff properly first made attempts to identify Agic's attorney in this action and sought waivers of service from two different attorneys Plaintiff believed was representing Agic, and then sought the waiver of service from Agic himself. Then, when Plaintiff was unable to identify an attorney for Agic, Plaintiff quickly acted to arrange for personal service

---

[7] According to Plaintiff, the lawsuit in Bergen County Superior Court, Furnish v. Ramapo, et. al., BER-L-2519-15, "similarly involved personal injuries (although not a sexual assault) to a female guest at a PIKE Party at Ramapo College, where alcohol was being distributed." Whalen Cert. ¶ 7, D.E. 49-1. Although Agic was not named as a Defendant in that case, Whalen presumed it was likely that Mr. Gorelick would be representing Agic, as former President of PIKE Local, in this present matter. Id.

to be effected. These actions demonstrate that Plaintiff acted with reasonable diligence in attempting to serve Agic within the ninety-day time period. Furthermore, Agic has not raised any cognizable grounds of prejudice resulting from the lack of timely service. Therefore, Plaintiff's motion for an extension of time for service on Defendant Agic is granted, and the personal service on March 2, 2017 will be deemed timely.

### v. **Defendant PIKE Local**

The history of service on Defendant PIKE Local is similar to that described above for Defendant Agic. On November 16, 2016, Plaintiff sent a waiver of service form for PIKE Local to Mr. Charlton because Plaintiff believed that Mr. Charlton was serving as counsel for the local fraternity chapter at that time. Whalen Cert. ¶ 5, D.E. 46-2. When Mr. Charlton informed Plaintiff that he was no longer representing PIKE Local, Plaintiff sent waivers on December 29, 2016, to the attorney representing PIKE Local in the Bergen County Superior Court civil action, in which PIKE Local was a named defendant. Id. ¶¶ 7-10. Mr. Gorelick wrote to Plaintiff on January 12, 2017, and informed Plaintiff that he would not be representing PIKE Local in the present matter, and would not be executing the waiver of service form on behalf of PIKE Local. Id. ¶ 11. Mr. Gorelick has informed Plaintiff that he has "no idea who, if anyone, will be representing the chapter," as the PIKE Local chapter has closed and is "no longer in existence." See Email Correspondence, April 18, 2017, Exh. H to Whalen Cert., D.E. 46-4.

To date, Plaintiff has been unable to identify a currently registered agent responsible for accepting service of process for PIKE Local. Mr. Charlton informed Plaintiff that he had been the registered agent for PIKE Local, but did not provide Plaintiff with any information regarding the person who is serving as the current registered agent. Pl.'s Br. in Supp. of Mot. at 6, D.E. 46-1. Plaintiff also reached out to Defendant Agic, as the former president of PIKE Local, for

15

information regarding someone who could accept service on behalf of the chapter, but Agic was unable to provide any information besides informing Plaintiff that the chapter no longer existed. Whalen Cert. ¶ 18, D.E. 46-2. For the reasons discussed above for Defendant Agic, the Court concludes that Plaintiff has demonstrated "good cause" warranting an extension of time to effect service beyond the ninety-day time period for Defendant PIKE Local. See MCI Telecomms. Corp., 71 F.3d at 1097.

Therefore, the Court must next consider Plaintiff's request to serve PIKE Local through its insurance carrier, Lloyd's of London. [8] See Br. in Supp. of Mot. for Extension and Sub. Service at 14-16, D.E. 46-1. For this request, the Court must determine whether substituted service upon Lloyd's of London would constitute notice "reasonably calculated" to apprise Defendant PIKE Local of the pending action. See Mullane, 339 U.S. at 314.

New Jersey courts have specifically addressed the issue of whether service on a defendant's insurance carrier would be fair to the defendant, and have held that, in establishing due process, a plaintiff must first make a prima facie showing "that the claims asserted against defendant are covered by the … insurance policy." See Houie v. Allen 192 N.J. Super. 517, 522 (App. Div. 1984) (remanding the case to the trial court to determine if plaintiff had made a prima facie showing that defendant's insurance carrier would be covering plaintiff's claims); see also Toro v. Rodriguez, 2006 WL 3350857, *2 (N.J. App. Div. Nov. 17, 2006) (finding that because the

---

[8] The Court grants the application of Certain Underwriters at Lloyd's London ("Lloyd's") to intervene, D.E. 52. First, the motion to intervene is unopposed. Second, the Court is satisfied that Lloyd's application satisfies the standards for intervention pursuant to Federal Rule of Civil Procedure 24(a). See Mountain Top Condo Ass'n v. Dave Stabbert Master Builder Inc., 72 F.3d 361, 366 (3d Cir. 1995) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987). Lloyd's filed the motion only two weeks after Plaintiff moved for substitute service, and therefore the intervention application is timely. Moreover, Lloyd's interest in the proceedings—i.e., opposing being appointed the agent to effect substitute service on a party with which its interests might not be aligned—is readily apparent and not otherwise protected by the other parties to the litigation.

insurance carrier had denied coverage to defendant there was no "common incentive to serve the missing defendants," and therefore substituted service on the insurance carrier would not comport with due process).

In this case, Lloyd's of London opposes Plaintiff's motion for substitute service, asserting that because it has denied all insurance coverage on behalf of PIKE Local for Plaintiff's claims, substitute service is not appropriate. See Br. in Opp'n to Mot. for Sub. Service, D.E. 51. On November 14, 2014, Lloyd's of London sent a denial of coverage letter to PIKE Local, explaining that the policy in place did not provide for "defense cost coverage to the Chapter" meaning that "Underwriters will not defend the Chapter, pay for any lawyer to defend the Chapter in the lawsuit, or indemnify the Chapter for any award recovered against it in the lawsuit." See November 14, 2015 Denial Ltr., Exh. A to Mot. to Intervene, D.E. 52-3. Lloyd's also denied coverage based on the "Sexual Abuse or Misconduct Exclusion, which applies to all claims arising out of in any way resulting from any type or form of Sexual Abuse or Misconduct, regardless of the theory of liability asserted." Id.

Based on these representations by Lloyd's of London in their opposition to Plaintiff's motion for substitute service, it is apparent that Lloyd's of London and PIKE Local do not have aligned interests in this case, and in fact their interests are opposed. It is therefore unlikely that serving PIKE Local's insurance carrier would apprise PIKE Local of the action currently against it, and due process would not be satisfied. As such, Plaintiff's motion to serve PIKE Local's insurance carrier, Lloyd's of London, is denied without prejudice to Plaintiff's right to seek another form of substitute service on PIKE Local.

## IV. CONCLUSION

For the reasons set forth herein, the Court concludes will grant Plaintiff's request for extensions of time to serve Defendants Rainone, Sommers and Massood, D.E. 41, and order that service on Defendant Sommers, which occurred on March 21, 2017, is timely. The Court also will deem service on Defendant Massood, which occurred on April 6, 2017, timely. Additionally, the Court will grant Plaintiff's request to serve Defendant Rainone through his attorney, Victoria Wickman, and by way of regular and certified mail, and require that Plaintiff effect such service by October 14, 2017. The Court also will grant Plaintiff's motion for an extension of time to serve Defendant Agic, D.E. 50, and deem that service upon Agic, which occurred on March 2, 2017, is timely. The Court also will grant the application of Lloyd's to intervene, D.E. 52. The Court will deny Plaintiff's application to serve PIKE Local through Lloyd's, but grant Plaintiff until October 14, 2017 to effect service on PIKE Local or make an appropriate application to the Court for substitute service.

An appropriate Order follows this Opinion.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated: September 14, 2017

18