UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE JONES,<br><br>    Plaintiff,<br><br>  v.<br><br>PI KAPPA ALPHA INTERNATIONAL FRATERNITY, INC.; BRETT HELBERG; DAVID MALINOWSKI; PI KAPPA ALPHA FRATERNITY -- LOCAL CHAPTER MU ZETA at RAMAPO COLLEGE; SKENDER AGIC; JOHN HOGAN; JOSHUA WILLIAM NEWMAN; RAMAPO COLLEGE OF NEW JERSEY; RAMAPO COLLEGE BOARD OF TRUSTEES; VINCENT MARKOWSKI; PETER MERCER; CORY ROSENKRANZ; MELISSA VAN DER WALL; CHRISTOPHER RAINONE; JUSTIN SOMMERS; KORIN LEVETSANOS; WAYNE JOHNSON; CHRISTIAN LOPEZ; NAKEEM GARDNER; JOHN/JANE DOES 1-20; and XYZ CORPORATIONS 1-10,<br><br>    Defendants. | Civ. No. 2:16-cv-7720-KM-MAH<br><br>OPINION |

## MCNULTY, U.S.D.J.:

Plaintiff Jane Jones[1] has asserted twenty causes of action regarding alleged sexual assaults at Ramapo College on November 14, 2014. (Compl. ¶ 33 (DE 161)).[2] Two persons criminally charged with commission of the sexual

---

[1]   This fictional name is used to protect the plaintiff's privacy.

[2]   Citations to certain record items will be abbreviated as follows:

  DE = Docket entry number

  Compl. = First Amended Complaint and Jury Demand (DE 161)

  Def. Brf. = PIKE Fraternity Defendants' Brief in Support of Motion to Dismiss (DE 148-1)

  Pl. Brf. = Plaintiff's Brief in Opposition (DE 159)

1

assaults, Nakeem Gardner and Christian Lopez, have now pled guilty and been sentenced.[3] This action is brought against Ramapo College, the fraternity of which the assailants were members, and a number of individuals.

Currently before the Court is the motion of one group of defendants for judgment on the pleadings. See Fed. R. Civ. P. 12(c). The movants (referred to collectively as the "PIKE Fraternity Defendants") are Pi Kappa Alpha International Fraternity, Inc. ("PIKE"), Brett Helberg, and David Malinowski. Helberg and Malinowski (the "Individual Defendants") are alleged to be advisers or consultants to PIKE and are being sued in both their personal and official capacities.[4]

The counts of the First Amended Complaint at issue on this motion are Counts 3, 4, and 11. Count 3 (Social Host Agency) and Count 4 (Negligent Supervision) are asserted against all of the PIKE Fraternity Defendants. Count 11 (New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12) is asserted against PIKE only.[5]

For the reasons set forth below, the PIKE Fraternity Defendants' motion to dismiss the First Amended Complaint is granted in part and denied in part.

---

Def. Reply Brf. = PIKE Fraternity Defendants' Reply Brief in Further Support of Motion to Dismiss (DE 164)

[3] This action was stayed pending resolution of the criminal case. (DE 100) After the criminal proceedings were concluded, Plaintiff's motion to file an amended complaint was granted. (DE 142, 160). Among other things, the first amended complaint now names Gardner and Lopez as defendants. (They had previously been referred to in the factual narrative by their initials, N.G. and C.L.) The PIKE Defendants' motion to dismiss was filed prior to the filing of the amended complaint, but the amendments do not affect the issues asserted in that motion. For simplicity, this Opinion cites to the facts as alleged in the first amended complaint (DE 161).

[4] Also named as defendants are other fraternity members or officers, who are not movants here.

[5] Counts 1–2, 5–8, and 12–20 of the First Amended Complaint are not asserted against the PIKE Fraternity Defendants. The parties have stipulated that Count 11 is dismissed as to the Individual Defendants, leaving only PIKE itself. (DE 191). The parties have also stipulated that Counts 9 and 10 are dismissed as to the PIKE Fraternity Defendants. (DE 76).

## I. FACTUAL BACKGROUND

In considering a motion to dismiss, the Court is required to treat the facts alleged in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. I summarize those allegations as follows:

On or about Friday, November 14, 2014, PIKE's Mu Zeta Chapter held a "Date Night" party on the Ramapo College Campus. (Compl. ¶¶ 38-39). The party was held at the on-campus apartment of defendant John Hogan, the fraternity chapter's sergeant-at-arms. (Id. ¶¶ 12, 39). Plaintiff Jane Jones was a nineteen-year-old Ramapo student at the time. (Id. ¶ 40). She was not originally invited to the party, but entered after several fraternity members recruited "random students outside of the apartment building" to attend the party by "calling down" from Hogan's balcony. (Id. ¶ 43).

When Jones arrived at the party, a twenty-four-year-old fraternity "pledge" named Christian Lopez served her alcoholic drinks until she was "complete[ly] inebriated." (Id. ¶¶ 42, 44). Lopez then "lured" Jones into Hogan's bedroom. (Id. ¶ 44). Lopez and Joshua William Newman played "Rock, Paper, Scissors" outside Hogan's bedroom door "to determine who would get to sexually assault and rape" Jones. (Id. ¶ 45). Lopez then sexually assaulted her. (Id.).

Other fraternity members, including Hogan, became aware of the sexual assault. (Id. ¶ 46). Instead of intervening to protect Jones, the other fraternity members expelled Lopez and Jones from the party. (Id. ¶¶ 47). Left behind at the party were Jones's shoes, underwear, jacket, and school identification. (Id. ¶ 57).

Christopher Rainone, Justin Sommers, and Wayne Johnson, who were then Ramapo students, assisted Lopez in putting the "visibly intoxicated" Jones into Lopez's car. (Id. ¶ 50). Lopez drove Jones across campus, passing through a number of campus security checkpoints, to Mackin Hall, the freshman

3

dormitory. (*Id.* ¶ 61-62). Lopez, who was not a freshman, did not have access to the dorm. (*Id.* ¶ 62). However, Rainone and Sommers provided Lopez with one of their ID cards and allowed Lopez to use their dorm room. (*Id.* ¶¶ 63-64). Lopez and another individual, Nakeem Gardner, took Jones to the dorm room, where they repeatedly sexually assaulted and raped her. (*Id.* ¶ 65). During much of this assault, the door was open; Jordyn Massood, Rainone, Sommers, and Korin Levetsanos watched, "celebrated," and Massood, Rainone, and Sommers videotaped the assaults. (*Id.* ¶¶ 70-72).

Jones suffered permanent and severe physical and psychological injuries and emotional and mental distress, as well as economic and other damages. (*Id.* ¶ 77). She was unable to continue at Ramapo College, and this incident has had a negative effect on her educational career. (*Id.* ¶ 78).

Jones alleges that PIKE sets the policies and standards for each local fraternity chapter. (*Id.* ¶ 83). The PIKE Fraternity Defendants allegedly knew or should have known that the Mu Zeta Chapter had been previously disciplined for alcohol violations and sexual assault incidents. (*Id.* ¶ 156). The Individual Defendants were allegedly advisors or consultants to the Mu Zeta Chapter on behalf of PIKE and were responsible for training, supervising, monitoring and enforcing PIKE's code of conduct with respect to the Mu Zeta Chapter. (*Id.* ¶¶ 8-9).

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(c) provides for judgment on the pleadings after the pleadings have been closed. "A motion for judgment on the pleadings will be granted, pursuant to Fed. R. Civ. P. 12(c) if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-263 (3d Cir. 2008) (internal citations omitted). For present purposes, there is no material difference in the legal standards between a Rule

4

12(c) motion and a Rule 12(b)(6) motion. *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Federal Rule of Civil Procedure Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

Section III.A discusses Count 3 (Social Host Agency) and Count 4 (Negligent Supervision), in relation to the Individual Defendants. Section B addresses Count 11 (NJLAD Hostile Educational Environment), asserted

5

against PIKE. Section C addresses the Individual Defendants' motion to dismiss various crossclaims.

## A. State-Law Tort Claims

Counts 3 and 4 are asserted against all of the PIKE Fraternity Defendants, but defendants do not dispute that these counts state a claim against PIKE itself. (Def. Reply Brf. at 1). Therefore, I will consider the motion to dismiss Counts 3 and 4 only insofar as they are asserted against the Individual Defendants, Helberg and Malinowski.

### 1. Social Host Liability

In Count 3, Jones alleges that the Individual Defendants are subject to "social host agency" liability. That, at least as it might apply here, is a novel legal theory in New Jersey.

Social host liability was introduced in New Jersey through its Supreme Court in *Kelly v. Gwinnell*, 96 N.J. 538 (1984). Certain of the principles stated in *Kelly* were codified by the legislature several years later in N.J. Stat. Ann. §§ 2A:15-5.5 to -5.8 (the "Social Host Statute"). Liability under that statute is limited to injuries arising out of the "negligent operation of a vehicle." N.J. Stat. Ann. § 2A: 15-6.6(b)(3). Further, the Social Host Statute declares itself to be "the exclusive civil remedy for personal injury or property damage resulting from the negligent provision of alcoholic beverages by a social host to a person who has attained the legal age to purchase and consume alcoholic beverages." N.J. Stat. Ann. § 2A: 15-5.6(a).

Injuries caused by the operation of a vehicle are not at issue here, so the Social Host Statute does not apply. The statute preempts other bases for liability for serving alcohol to an adult, but leaves open liability for serving alcoholic beverage to minors. *See Dower v. Gamba*, 647 A.2d 1364, 1369 (N.J. Super. Ct. App. Div. 1994) (citing cases imposing liability for serving alcohol to minors, stating that the Social Host Statute left such liability "subject to common-law development by the courts"). Thus a pre-Social Host Statute case

6

applied the reasoning in *Kelly* to provide a cause of action to an intoxicated minor guest against the parents who owned the residence where the party occurred. *Batten by Batten v. Bobo*, 528 A.2d 572, 573 (N.J. Super. Ct. Law Div. 1986). A post-Social Host Statute case cited *Batten* as good authority, agreeing that the wording of the statute "strongly suggest[ed] that principles of liability for permitting minors to obtain alcoholic beverages is a subject for common-law development by the courts." *Morella v. Machu*, 563 A.2d 881, 884 (N.J. Super. Ct. App. Div. 1989). The parents, *Morella* held, were not present in their home when the party occurred, but nevertheless "had a duty to the public to exercise reasonable care to arrange for competent supervision of their teenagers while they were out of the state on vacation." *Id.* at 885.

A recent Appellate Division case discussed at length the current state of the law as to liability for provision of alcohol to minors. *Estate of Narleski v. Gomes*, 211 A.3d 737 (N.J. Super. Ct. App. Div.) (Sabatino, J.), *certif. granted*, 218 A.3d 292 (2019). I take it as a guide here.

*Narleski* discussed the Social Host Statute,[6] but also considered an alternative basis for liability under a "quasi-criminal statute," N.J. Stat. Ann. § 2C:33-17 (the "Service to Underage Drinkers" statute). 211 A.3d at 744-45. The Service to Underage Drinkers statute mandates that anyone who "purposefully or knowingly offers or serves or makes available an alcoholic beverage to a person under the legal age for consuming alcoholic beverages or entices or encourages that person to drink an alcoholic beverage" or "makes real property owned, leased or managed by him available to, or leaves that property in the care of, another person with the purpose that alcoholic beverages will be made available for consumption by, or will be consumed by, persons who are under the legal age for consuming alcoholic beverages" shall be guilty of a disorderly persons offense. N.J. Stat. Ann. § 2C:33-17. While

---

[6] Unlike this case, *Narleski* involved injury related to the operation of a vehicle, a prerequisite to Social Host Statute liability.

allowing for the possibility of such liability, the *Narleski* court set it aside on factual grounds.

The parent, the *Narleski* court found, did not make alcohol available and was unaware that her son as host, or his friends, were drinking there. Nor did the parent evince any purpose to make alcoholic beverages available to the underage drinkers in their home. As for the host, her son, the Court found that it was actually a third party who purchased the alcohol and furnished it—*i.e.,* made it "available." And the son did not own, lease, or manage his parents' home, where the consumption occurred.

The same holds true here. The Service to Underage Drinkers statute limits liability to those who (1) purposefully or knowingly made alcohol available to an underage drinker or (2) owned, leased or managed real property where alcohol will be consumed by underage drinkers. On the first prong, there is no factual allegation that the Individual Defendants themselves made alcohol available to any of the fraternity members or their guests. At best, the complaint alleges that they were generally responsible for supervising the fraternity. As for the second, real-property prong, Jones alleges that the party took place on the Ramapo College campus, and there is no allegation that the fraternity, let alone the Individual Defendants, had any ownership, rental, or management-based interest in the property.

*Narleski* then discussed common law theories of liability. To understand the discussion, it is necessary to know that the general age of majority in New Jersey is 18, although the drinking age is 21.

*Narleski* acknowledged the general principle that parents, even when absent, are responsible to make reasonable arrangements for supervision of their minor children in relation to alcohol. *See, e.g., Batten, supra.* In relation to an adult child, however, the court declined to recognize a parental duty giving rise to social host liability. 211 A.3d at 747–48. The single, narrow exception to that rule was based on a "special relationship" that might apply to the parent of, *e.g.,* an adult child with a mental disability. *Id.* at 748.

8

*Narleski* turned to the liability of the 19-year-old host. The court had no difficulty with the concept that the host, already a parent himself, owed a duty "to injured parties to desist from facilitating the drinking of alcohol by underage adults in his place of residence, regardless of whether he owns, rents, or manages the premises." *Id.* at 749. Such an expansion of liability, however, was imposed only prospectively.[7]

The common law claim is similarly lacking here. Where, despite a strong common-law background presumption of liability, the parent of a 19-year-old cannot be held liable for service of alcohol in her home, I cannot hold that "advisers and/or consultants" of a national fraternity can be held liable for service of alcohol at a local fraternity chapter's party. Assuming that, *e.g.*, Lopez (not a minor) could be liable for serving alcohol to Jones, who was under the legal age for the consumption of alcohol, I see no basis for extending that liability to the Individual Defendants. Nor, for what it is worth, was this on-campus property the Individual Defendants' "residence" for purposes of the rules announced in *Narleski*.

I find no support for the legal viability of the cause of action alleged here. Accordingly, Count 3 is dismissed as against the Individual Defendants.

## 2. Negligent Supervision

In Count 4, Jones asserts a claim of negligent supervision against the PIKE Fraternity Defendants for failure to exercise reasonable care in supervising the Mu Zeta Chapter, members of which were responsible for the assault on her. (Compl. ¶¶ 160-167).

According to Jones, the local Mu Zeta Chapter is an unincorporated association. (Compl. ¶ 10). While not liable in equity, unincorporated associations may be sued. N.J. Stat. Ann. §§ 2A: 64-1, -6.

---

[7] The court's caution in this area is palpable. It suspended its holding for 180 days to accommodate any further judicial or legislative response. 211 A.3d at 749.

9

Few New Jersey cases have "addressed the scope of duties that may be owed by a college fraternity, or its officers or members, to protect guests from violent conduct that may occur at a social event hosted by members of a fraternity." *Peguero v. Tau Kappa Epsilon Local Chapter*, 106 A.3d 565, 571 (N.J. Super. Ct. App. Div. 2015) (considering liability of national fraternity for the shooting of a party guest by an unknown assailant); *see also D.D. v. Stockton University*, No. 18-13506, 2019 WL 3369709 (D.N.J. 2019) (considering liability of national fraternity for an alleged sexual assault occurring at a fraternity house); *Jackson-Locklear v. William Patterson[8] University*, No. 16-5449, 2018 WL 1942521 (D.N.J. 2018) (considering liability of a national fraternity for the suicide of a woman who had alleged she was raped at a fraternity party). No New Jersey case has addressed whether an adviser or consultant of a national fraternity, as opposed to the fraternity itself, may be personally liable for tortious conduct of a local chapter's members. Therefore, I will analyze these Individual Defendants' potential liability under general principles of tort law. *See Peguero*, 106 A.3d at 571-575 (analyzing fraternity liability under the general principles of tort law).

The tort of negligent supervision has elements parallel to those of the tort of negligent hiring, which has its roots in principles of agency law. *See Smith v. Harrah's Casino Resort of Atl. City*, No. A-0855-12T2, 2013 WL 6508406, at *3-4 (N.J. Super Ct. App. Div. 2013). What is required is a showing that "the employer knew or had reason to know that the employee exhibited dangerous characteristics, that there was a reasonable foreseeability of harm to others, and that the negligent supervision was the proximate cause of the injuries." *Forrest v. Parry*, 930 F.3d 93, 112 (3d Cir. 2019) (citing *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 769 (D.N.J. 2016)). Where, as here, the relationship between the supervisor and the tortfeasor is not expressly that of employer and employee, courts have applied principles of agency and control to determine whether the alleged supervisor had a duty to supervise the

---

[8] *Sic.*

10

tortfeasor. *See Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 448 (2006) (applying the common-law element of control as the "principal guidepost" in determining whether an individual was an employee under federal statutes); *see also Lewis v. Bellows Falls Congregation of Jehovah's Witnesses*, 248 F. Supp. 3d 530, 540–42 (D. Vt. 2017) (applying Vermont's agency law-based test to a claim of negligent supervision).

In New Jersey, "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993) (citations omitted). "[D]irect control of principal over agent is not absolutely necessary; a court must examine the totality of the circumstances to determine whether an agency relationship existed . . . ." *Id.* at 80. New Jersey courts have not ruled on whether a fraternity officer (again, as opposed to the fraternity itself) is in an agency relationship with a local chapter or its members.

Here are the allegations that describe the positions of Helberg and Malinowski, the Individual Defendants:

> 8. At times relevant herein, specifically, at the time of the brutal sexual assault, Defendant Brett Helberg was a Member of the Pi Kappa Alpha International Fraternity, Inc. Upon information and belief, Defendant Brett Helberg served as an Adviser and/or Consultant to the Mu Zeta Chapter at Ramapo College on behalf of Pi Kappa Alpha Fraternity Inc. Upon further information and belief, Defendant Brett Helberg was responsible for training, supervising, monitoring and enforcing the National Fraternity's Code of Conduct and Policies as to that Chapter. Defendant Brett Helberg is being sued in his individual and official capacities.
>
> 9. At times relevant herein, specifically, at the time of the brutal sexual assault, Defendant David Malinowski was a Member of the Pi Kappa Alpha International Fraternity, Inc. Upon information and belief, Defendant David Malinowski served as an Adviser and/or Consultant to the Mu Zeta Chapter at Ramapo College on behalf of Pi Kappa Alpha Fraternity Inc. Upon further information and belief, Defendant David Malinowski was

11

responsible for training, supervising, monitoring and enforcing the National Fraternity's Code of Conduct and Policies as to that Chapter. Defendant David Malinowski is being sued in his individual and official capacities.

(Compl. ¶¶ 7, 8)

Count 3 ("Social Host Agency") contains the following factual allegations regarding the roles of the Individual Defendants:

> 153. At all times relevant hereto, an agency relationship existed between Defendant Pi Kappa Alpha International Fraternity, Inc. and Defendant Pi Kappa Alpha, Mu Zeta Chapter.
>
> 154. Indeed, Defendants David Malinowski and Brett Helberg, upon information and belief, served as Advisers and/or Consultants to the Mu Zeta Chapter at Ramapo College on behalf of Pi Kappa Alpha Fraternity Inc.
>
> 155. At all times relevant hereto, Defendant Mu Zeta Chapter was acting in furtherance of the interests of the Defendant Pi Kappa Alpha International Fraternity, Inc. to wit: The purpose of the "Date Night" Fraternity Party included, but was not limited to, promotion of membership in Pi Kappa Alpha International Fraternity, Inc.
>
> 156. At all times relevant hereto, the PIKE Fraternity Defendants ratified by acquiescence in the service of alcohol at social functions such as the aforesaid "Date Night" Frat Party by the following:
>
>> a. In failing to establish and communicate, and/or enforce, to individual Chapters and their Members, standards for the conduct of their activities;
>>
>> b. In failing to monitor the conduct of Mu Zeta Chapter and other local Chapters;
>>
>> c. In failing to take disciplinary action against the Mu Zeta Chapter for acts of misconduct, including prior incidents involving that Defendant;
>>
>> d. In failing to take disciplinary action against the Mu Zeta Chapter after the PIKE Fraternity Defendants knew or should have known that Defendant Mu Zeta Chapter had been

disciplined for the types of alcohol violations and sexual assault
incidents similar to those that impacted Plaintiff; and

e. In continuing to sanction or permit Mu Zeta Chapter to hold
social events where the consumption of alcohol was encouraged
and/or promoted in direct contravention of the established
policy of Ramapo College of New Jersey, New Jersey statute and
common law.

(Compl. ¶¶ 153–56) Those allegations are incorporated by reference in Count 4 (Negligent Supervision). (Compl. ¶ 160) Count 4 contains the following additional allegations concerning the roles of the Individual Defendants:

161. The PIKE Fraternity Defendants retain the right to control the activities of their Members and Chapters.

162. Indeed, Defendants David Malinowski and Brett Helberg, upon information and belief, served as Advisers and/or Consultants to the Mu Zeta Chapter at Ramapo College on behalf of Pi Kappa Alpha Fraternity Inc.

163. Among other things, because of the actual relationship between the PIKE Fraternity Defendants and Defendant Mu Zeta Chapter, and its Members; because all social functions are on and for the benefit of the Defendant Pi Kappa Alpha International Fraternity, Inc.; because the PIKE Fraternity Defendants knew and/or reasonably should have known, that their duly authorized representative Chapters are managed by under-experienced students who are dependent upon the PIKE Fraternity Defendants for safety procedures and policies at Fraternity Events; because the PIKE Fraternity Defendants benefit financially from the activities for its duly authorized representative Chapters, its Members and student initiates (Pledgees like Christian Lopez); because the PIKE Fraternity Defendants create all risk management policies for the Chapters, its Members and student initiates given its specialized knowledge of the dangers that "Frat parties" can pose; and because the PIKE Fraternity Defendants have the ultimate power to revoke, suspend, cancel, permit, grant or allow membership in Pi Kappa Alpha Fraternity by Chapters, Members, or student initiates, the PIKE Fraternity Defendants had a duty to control and supervise its Fraternity Members and Chapters with an obligation to exercise reasonable care in supervising its Fraternity Members and

13

chapters and a duty to oversee Fraternity events/functions (such as "Date Night") for Mu Zeta Chapter.

164. The PIKE Fraternity Defendants failed to use reasonable care by permitting its Members to host a Fraternity party which would include providing alcoholic beverages to minors.

(Compl. ¶¶ 160–64)

From these allegations, it can plausibly be inferred that an agency relationship existed between the national fraternity and its local chapter. It is plausible that members of a fraternity chapter consent to supervision by the national organization as a condition of membership. The Individual Defendants are alleged to have been the persons who, in particular, were responsible for supervising the Mu Zeta Chapter. Jones has alleged further that PIKE had the power to revoke or suspend membership based on noncompliance with the national fraternity's oversight. (Compl. ¶ 163). This allows an inference of PIKE's control over the local chapter and its members, control which was in this case to be exercised through the Individual Defendants. That inference might or might not be borne out in discovery, but it is sufficiently alleged. I add as a makeweight that the specific roles of these Individual Defendants in the governance of the fraternity are excusably alleged on information and belief, as those facts are within the control of the PIKE Fraternity Defendants.

I turn to whether Jones has plausibly stated a claim that the Individual Defendants were negligent in their supervision of the chapter. The elements of such a claim, drawn from *Forrest*, 930 F.3d at 112, are (1) whether they knew that the chapter exhibited dangerous characteristics; (2) whether they could reasonably have foreseen harm to others; and (3) whether their negligent supervision was the proximate cause of Jones's injuries. The Complaint alleges defendants' likely awareness of "studies available throughout the fraternity industry...that guests at sponsored parties are in need of protection." (Compl. ¶ 80) In addition, the Individual Defendants allegedly knew or should have known that the Mu Zeta Chapter had been disciplined in the past for similar incidents of alcohol policy violations and sexual assault. (*Id.* ¶ 156(d)). Such

14

allegations satisfy the first two elements, *i.e.*, knowledge of dangerous characteristics and foreseeability of harm.

Cases rejecting potential liability are distinguishable. In *Peguero*, the plaintiff did not allege any similar prior conduct that might have put the defendants on notice of the danger. 106 A.3d at 574. Similarly, in *Jackson-Locklear*, the court declined to find that the plaintiff's sexual assault was foreseeable, in part because there was no "previous pattern of conduct at [the fraternity] which put the fraternity on notice that females were at risk of being assaulted on their premises." 2018 WL 1942521, at *4. Here, by contrast, the plaintiff has alleged information about college sexual assaults in general, which "may be relevant in assessing foreseeability." *Id.* She has also alleged, however, that there had been a pattern of similar conduct, *i.e.*, sexual assaults, at the fraternity. Accordingly, Jones has plausibly alleged that the assault against her was foreseeable.

As for the third prong, New Jersey courts have held that the standard for proximate cause depends on the nature of the tortious conduct:

> In routine tort cases, "the law requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant. In cases where concurrent causes of harm are present, the law requires consideration of the "substantial factor" test. The "but for" standard concentrates on one cause that sets the other causes in motion, while the 'substantial factor' test recognizes that a tortfeasor will be held answerable if its negligent conduct was a substantial factor in bringing about the injuries, even where there are other intervening causes which were foreseeable or were normal incidents of the risk created. Under the substantial factor test, the law of negligence recognizes that there may be any number of concurrent causes of an injury, and it is enough if they are a "substantial factor" in bringing it about, even if those acts by themselves are capable of producing the injury.

*Marina District Development Co., LLC v. Ivey*, No. 14-2283, 2018 WL 1469013, at *6 (D.N.J. 2018) (quoting and citing *Camp v. Jiffy Lube No. 114*, 706 A.2d

15

1193 (N.J. Super Ct. App. Div. 1998) (internal citations and quotation marks omitted).

Jones has alleged wrongdoing on the part of multiple tortfeasors. The role of each is plausibly alleged to have been a substantial factor in her injuries. The full extent of the Individual Defendants' role, if any, in the organization of the "Date Night" party is not known at this stage. Jones has alleged, however, that they were responsible for implementing PIKE's "risk management" policies, were supposed to supervise the Mu Zeta Chapter, and had the power to revoke membership, presumably for noncompliance with standards. According to the allegations, fraternity members became aware of the sexual assault against Jones during the "Date Night" party, and, instead of intervening, encouraged the assailant to leave the premises with his victim, the visibly intoxicated Jones. Supervision by fraternity advisors such as the Individual Defendants allegedly could have prevented both the initial and subsequent assaults from taking place. Therefore, Jones has met her burden in alleging that negligent supervision by the Individual Defendants was a proximate cause of her injuries.[9]

Whether such allegations are supported by evidence, as I have indicated, is a question for another day. For now, I find that Jones has plausibly alleged the elements of a negligent supervision claim against the Individual Defendants. The motion to dismiss Count Four is therefore denied.

### B. Discrimination Claims

The PIKE Fraternity Defendants contend that Count 11 fails to state a claim against them. As discussed above, the parties have stipulated that Count 11 does not apply to the Individual Defendants. The cause of action at issue is

---

[9] Foreseeability reenters the analysis at the proximate cause stage. *See Marina District Development Co.*, 2018 WL 1469013, at *7 (citing *Komlodi v. Picciano*, 89 A.3d 1234, 1251-52 (N.J. 2014)). Whether or not there was a superseding cause also affects the proximate cause analysis, but a superseding cause does not break the chain of causation if the superseding action was foreseeable. *Id.* As discussed above, the assault is plausibly alleged to have been foreseeable by the Individual Defendants; the acts of assault, then, are a part of, not a break in, the chain of causation.

whether defendant PIKE is liable for violating the New Jersey Law Against Discrimination ("NJLAD") on a "hostile educational environment" theory. The theory, while representing an extension of existing law, is sufficiently alleged to permit the case to go forward.

NJLAD is aimed at eradicating the "cancer" of discrimination, and by its own terms is to be "liberally construed." N.J. Stat. Ann. § 10:5-3. Thus NJLAD provides that "[a]ll persons shall have the opportunity to obtain ... all the accommodations, advantages, facilities, and privileges of any place of public accommodation ... without discrimination because of ... sex ...." N.J. Stat. Ann. § 10:5–4. *See also* N.J. Stat. Ann. § 10:5-12(f).

Membership-based organizations can qualify as places of public accommodation. *See Dale v. Boy Scouts of America*, 706 A.2d 270, 280 (N.J. Super. Ct. App. Div. 1998), *rev'd on other grounds*, 530 U.S. 640 (2000) (classifying the national Boy Scouts organization as a place of public accommodation); *Nat'l Org. for Women v. Little League Baseball*, 318 A.2d 33, 37-38 (N.J. Super. Ct. App. Div. 1974) (classifying a municipal Little League baseball program as a place of public accommodation). Whether an organization can be so classified depends on "whether the invitation to gather is open to the public at large." *Kiwanis Intern. v. Ridgewood Kiwanis Club*, 806 F.2d 468, 474 (3d Cir. 1986) (citing *Little League Baseball*, 318 A.2d at 37-38) (emphasis omitted).

Whether this fraternity qualifies as a place of public accommodation may raise factual issues. Jones has alleged that, at least with respect to the "Date Night" party, the solicitation was general. Indeed, members "call[ed] down to recruit guests to the party" from the apartment's balcony. (Compl. ¶ 43). The PIKE Fraternity Defendants have emphasized PIKE's selectivity of membership and secrecy of rituals. (Def. Brf. at 9). That emphasis may be misplaced, as Jones does not claim that she sought and was denied membership.

True, NJLAD public accommodation claims often do involve discriminatory policies or practices in relation to membership or access. Denial

17

of access is not the only basis for liability, however. NJLAD is broad enough to accommodate a "hostile environment" claim. Typically, such a claim relates to discriminatory conditions in the workplace. *See, e.g., Nuness v. Simon & Schuster, Inc.*, 325 F. Supp. 3d 535, 556 (D.N.J. 2018); *Barroso v. Lidestri Foods, Inc.*, 937 F. Supp. 2d 620, 629 (D.N.J. 2013). The hostile environment theory has been extended, however, "into other contexts, such as a school setting." *Doe v. Schwerzler*, No. 06-3529, 2008 WL 4066338, at *4 (D.N.J. 2008) (citing *L.W. v. Toms River Regional Schools Bd. of Education*, 915 A.2d 535, 550 (N.J. 2007)). Thus, in *Schwerzler*, the court found that a student from School A had a viable claim against School B that she had a right to participate in School B's swim team events without being sexually harassed. 2008 WL 4066338, at *5.

Less well established, but nevertheless present in the case law, is a NJLAD cause of action based on the discriminatory behavior of a business owner. Such behavior may be actionable if it is outrageous enough to imply a design to discourage an individual's use of that public accommodation on account of her protected status. *See Turner v. Wong*, 832 A.2d 340, 355-356 (N.J. Super. Ct. App. Div. 2003) (denying defendant's motion for summary judgment on NJLAD claim in which the operator of a doughnut store shouted racial slurs at a customer but did not deny service) (citing *Franek v. Tomahawk Lake Resort*, 754 A.2d 1237, 1244 (N.J. Super. Ct. App. Div. 2000) (operator of recreational resort heard to remark that "I don't want those kind of people here" in connection with handicapped patron who left voluntarily)).

In this case, the allegations relate not to Jones's exclusion from the fraternity event, but rather to her treatment when she attended it. Jones is alleging hostile educational environment discrimination on the basis of sex. (Compl. ¶ 238). She alleges that she was sexually assaulted by a PIKE pledge while at an event hosted by PIKE's local chapter. Other fraternity members encouraged or were at best indifferent to the assault. Such an environment

18

would tend to subject a female person to discrimination in the enjoyment of the facilities of that fraternity.

The contours of a hostile educational environment claim remain somewhat unsettled. It is unclear, for example, whether the plaintiff would have to demonstrate PIKE's actual notice and deliberate indifference. Likewise unclear is the extent to which a hostile educational environment claim may extend to a fraternity social event, albeit one occurring on campus.

In short, the NJLAD theory of this claim has some novel features. I will not cut it off at this early stage, but will permit factual development. *See generally J.M. ex rel. A.M. v. E. Greenwich Twp. Bd. of Educ.*, No. 07-2861, 2008 WL 819968, at *9 (D.N.J. 2008) ("As noted above, this Court in *Woodruff v. Hamilton Twp. Public Schools*, 2007 WL 1876491, *4 (D.N.J. June 26, 2007) recognized in that case that the plaintiffs pleaded a novel theory of law for a hostile educational environment claim under the NJLAD, and consequently did not dismiss that claim pursuant to the defendants' Rule 12(b)(6) motion."); *K.P., ex rel. S.C. v. Corsey*, 228 F. Supp. 2d 547, 551 (D.N.J. 2002), *rev'd in part*, 77 F. App'x 611 (3d Cir. 2003) (District court should not have exercised supplemental jurisdiction over issue of school district's NJLAD liability for sexual harassment by coach, which presented novel issues of state law).

PIKE's motion to dismiss Count 11 (NJLAD Hostile Educational Environment) is therefore denied.

### C. Cross Claims

The PIKE Fraternity Defendants move, not very specifically, to dismiss crossclaims asserted by codefendants against the Individual Defendants. Federal Rules of Civil Procedure 13(g) governs crossclaims:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for

19

all or part of a claim asserted in the action against the crossclaimant.

The PIKE Fraternity Defendants do not state which crossclaims they seek to dismiss. They merely assert that since the cross-claimants have asserted no facts against them, the crossclaims must be dismissed. The crossclaims, however, are all based—as they must be—on the same factual transactions alleged in the complaint. Dismissal of crossclaims is not appropriate at this stage.

## CONCLUSION

For the foregoing reasons, the PIKE Fraternity Defendants' motion to dismiss the First Amended Complaint is **GRANTED** as to Count 3 insofar as it relates to the Individual Defendants, Helberg and Malinowski. The motion to dismiss is **DENIED** as to all other Counts and claims. What remains of Counts 3, 4, and 11 are the following:

Count 3 (against PIKE only)

Count 4 (against PIKE, Helberg, and Malinowski)

Count 11 (against PIKE only)

An appropriate Order follows.

Dated: December 17, 2019

HON. KEVIN MCNULTY, U.S.D.J.